**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID T. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 4:25-CV-00528-SPM |
| | ) | |
| FRANK BISIGNANO,<br>Commissioner of Social Security,[1] | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Frank Bisignano, Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff David T. ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 7). Because I find the decision denying benefits was not supported by substantial evidence, I will reverse the Commissioner's denial of Plaintiff's application and remand the case for further proceedings.

---

[1] Frank Bisignano is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. Factual Background

The Court accepts the facts as set forth in Plaintiff's Statement of Facts and Defendant's response. The Court will cite to specific portions of the transcript as needed to address the parties' arguments. Briefly, on March 8, 2024, Plaintiff testified at a hearing before the ALJ that he cannot work due to pain and lack of feeling in his feet and hands from neuropathy. He has very little feeling in his feet, does not walk well, stumbles on bare floors, and falls occasionally. He also has burning, itching, and sharp pain in his feet and legs. He can hardly stand in one spot at all. He has to constantly shift his weight back and forth or walk it off. In the shower, he always has to hold one of the side walls. He can walk for about 15 minutes before taking a break. Because his hands go to sleep, burn, and cramp, he cannot pick up change, and he has difficulty buttoning his shirt, texting, and turning pages. The medical records show that Plaintiff has received regular treatment for diabetic neuropathy in his hands and feet from his primary care provider, has sought treatment from a podiatrist and a neurologist, and has been prescribed various medications for neuropathy. The record contains opinion evidence from two state agency consultants. Dr. Judee Bland reviewed the record and found Plaintiff could stand and/or walk with normal breaks for about six hours in an eight-hour work-day; should avoid vibration and hazards; and was limited to frequent feeling on the left due to neuropathy but otherwise had no limitations in handling, fingering, or feeling. (Tr. 77). Dr. Aaron Noll reviewed the record and found similar limitations but found that Plaintiff was limited to occasional fingering and feeling in both hands. (Tr. 97).

## II. Procedural Background

In February of 2023, Plaintiff applied for DIB and SSI, alleging disability beginning April 30, 2021. (Tr. 201-13). His applications were denied initially and again upon

reconsideration. (Tr. 73-113). On September 28, 2023, Plaintiff filed a Request for Hearing by Administrative Law Judge ("ALJ"). (Tr. 144-45). On February 20, 2024, Plaintiff amended his alleged onset date to February 10, 2022. (Tr. 232). On March 8, 2024, the ALJ held a hearing. (Tr. 32-66). On April 25, 2024, the ALJ issued an unfavorable decision. (Tr. 10-31). On May 31, 2024, Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council. (Tr. 197-98). On February 13, 2025, the Appeals Council denied review. (Tr. 1-5). The decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## III. Standard for Determining Disability Under the Act

To be eligible for benefits under the Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Act, a person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if the claimant is, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month duration requirement in § 404.1509 or § 416.909], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner finds the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), which is "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work by comparing the claimant's

RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant is found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2), 416.920(a)(4)(v), 416.920(g), 416.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).

## IV. THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff has not engaged in substantial gainful activity since February 10, 2022, the amended alleged onset date; that Plaintiff had the severe impairments of diabetes mellitus, peripheral neuropathy, and obesity; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 15-18). The ALJ found that Plaintiff had the following RFC:

> The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with additional limitations that he can stand or walk for 6 hours in an 8-hour workday, and he can sit for 6 hours in an 8-hour workday. He can change positions every hour, while remaining at the duty station. He can occasionally climb ramps and stairs. He can never climb ladders, ropes, or scaffolds. He can occasionally balance. He can frequently stoop, kneel, crouch and crawl. He can frequently finger and feel, bilaterally. He can tolerate occasional exposure to extreme cold. He must avoid all exposure to vibration and hazards, such as moving mechanical parts and high exposed places.

(Tr. 19). At Step Four, relying on the testimony of a vocational expert, the ALJ found Plaintiff was capable of performing his past relevant work as a buyer (*Dictionary of Occupational Titles* ("*DOT*") No. 162.157-038, both as he actually performed it (sedentary) and as it is generally performed (light). (Tr. 23-24). At Step Five, the ALJ found in the alternative that in addition to past relevant work, there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform, including office helper (*DOT* No. 239.567-010), mail clerk (*DOT* No. 209.687-026), and information clerk (*DOT* No. 208.685-014). (Tr. 24-25). Accordingly, the ALJ found that Plaintiff was not under a disability from February 10, 2022, through the date of the decision. (Tr. 25).

## V. STANDARD FOR JUDICIAL REVIEW

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 58 F.3d 979, 981 (8th Cir. 2008)); *see also Estes v. Barnhart,* 275 F.3d 722, 724 (8th Cir. 2002); 42 U.S.C. §§ 405(g); 1383(c)(3). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is

enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted). *See also Biestek*, 587 U.S. at 103 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consol. Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

The Court reviews de novo whether the Commissioner's determination was based on legal error. *Dewey v. Astrue*, 509 F.3d 447, 449 (8th Cir. 2007) (citing *Miles v. Barnhart*, 374 F.3d 694, 698 (8th Cir. 2004) & *Keller v. Shalala,* 26 F.3d 856, 858 (8th Cir. 1994)). "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Collins v. Astrue,* 648 F.3d 869, 871 (8th Cir. 2011) (internal citations omitted).

## VI. Discussion

Plaintiff argues that the ALJ's determination at Step Four that Plaintiff could perform his past relevant work was not supported by substantial evidence because (A) the ALJ's finding that Plaintiff could perform the buyer position as he actually performed it (a sedentary job that requires frequent fingering and handling) was tainted by the ALJ's failure to resolve inconsistencies between persuasive opinion evidence and the RFC; and (B) the ALJ's finding that Plaintiff could perform the buyer position as it is generally performed in the national economy (a light job that does not require frequent fingering or handling) was tainted by the ALJ's failure to properly evaluate Plaintiff's complaints of pain and numbness in his feet that limit his ability to stand and walk. Plaintiff also argues that the problems with the ALJ's evaluation of Plaintiff's complaints of numbness materially impacted the ALJ's alternative finding at Step Five that Plaintiff could perform other light jobs existing in the national economy.

### A. The ALJ's Step Four Finding that Plaintiff Could Perform the Buyer Position as Actually Performed

The Court first considers Plaintiff's argument that the ALJ's finding that Plaintiff could perform the buyer position as he actually performed it is not supported by substantial evidence because the ALJ failed to resolve inconsistencies between the persuasive opinion of state agency consultant Dr. Aaron Noll and the assessed RFC. Dr. Noll opined, *inter alia*, that Plaintiff was limited to only occasional fingering and feeling in both hands. (Tr. 97). In evaluating this opinion, the ALJ stated, in relevant part:

> [Dr. Noll] . . . limited the claimant to occasionally for fine fingering and feeling, in addition to avoidance of concentrated exposure to extreme cold and avoidance of even moderate exposure to vibration and hazards. These findings are generally persuasive, although the undersigned would limit any exposure to vibration and hazards and an additional limitation on changes of position.

(Tr. 22). The ALJ went on to state that the Dr. Noll's findings were "well supported" and "generally consistent with the record." (Tr. 22). However, in the RFC, the ALJ did not include Dr. Noll's limitation to occasional fine fingering and handling, instead finding that Plaintiff "can frequently finger and feel, bilaterally." (Tr. 19). Plaintiff argues that the ALJ erred by omitting Dr. Noll's fingering and feeling limitations from the RFC without explanation despite finding Dr. Noll's opinion persuasive.

The Court agrees with Plaintiff that the ALJ's omission of these opined limitations from the RFC, without explanation, was error. Of course, "there is no requirement that an ALJ adopt all of the findings or language of the state agency medical consultant, even if the opinion is given substantial weight." *Wolynski v. Kijakazi*, No. 4:21-CV-1158-SRW, 2022 WL 1521619, at *8 (E.D. Mo. May 13, 2022) (internal quotation marks omitted). However, courts within the Eighth Circuit have repeatedly found that *if an ALJ finds a medical opinion persuasive*, the ALJ must either include the limitations from that opinion in the RFC or explain why the ALJ is not doing so. *See, e.g.*, *Capelton v. Bisignano*, No. 4:24-CV-1478-NCC, 2026 WL 864069, at *4 (E.D. Mo. Mar. 30, 2026) (remanding where an ALJ found a medical opinion persuasive but failed to explain why he omitted from the RFC limitations from that opinion; collecting cases doing the same); *Harris v. Dudek*, No. 4:23-CV-1705-HEA, 2025 WL 776516, at *3 (E.D. Mo. Mar. 10, 2025) (remanding where the ALJ found a medical opinion persuasive but did not include certain limitations from that opinion and did not explain the decision not to include them; stating, "The purpose of the regulations (requiring the ALJ to explain persuasiveness) would be undermined if the ALJ could state a medical opinion was persuasive, well-supported, and consistent with the record, without adopting the limitations contained in that opinion or otherwise addressing them.") (internal quotation marks omitted); *Batson v. Kijakazi*, No. 20-03251-CV-S-WBG, 2022

WL 501405, at *4 (W.D. Mo. Feb. 18, 2022) ("Because the ALJ found Dr. Allen's opinions to be persuasive, supported by objective evidence, and consistent with the record, the ALJ should have included all limitations set forth by Dr. Allen. Alternatively, if the ALJ chose not to include any of Dr. Allen's limitations, the ALJ should have explained why any excluded limitation was not adopted. Here, the ALJ failed to do either. Thus, the RFC is not supported by substantial evidence."). *See also Gann v. Berryhill*, 864 F.3d 947, 952-53 (8th Cir. 2017) (applying a prior version of the regulations governing opinion evidence and remanding where the ALJ gave "significant weight" to two medical opinions yet failed to include limitations from those opinions in the RFC or in the hypothetical question posed to the vocational expert).

Here, as in the above cases, the ALJ erred by finding Dr. Noll's opinion persuasive, yet omitting Dr. Noll's limitations to occasional fingering and feeling from the RFC without explaining why those limitations were not included. This leaves the RFC unsupported by substantial evidence. *See Batson*, 2022 WL 501405, at *4. Additionally, it is clear that this error affected the ALJ's determination that Plaintiff could perform his past relevant work as actually performed: the vocational expert testified at the hearing that limitations to occasional fingering and feeling would eliminate the buyer position as actually performed by Plaintiff. (Tr. 64-65). Thus, the ALJ's Step Four finding that Plaintiff could perform his past relevant work as a buyer as actually performed is not supported by substantial evidence.

The lack of substantial evidence for this finding, standing alone, does not require remand because the ALJ made two alternative findings that may support the ALJ's decision that Plaintiff was not disabled. First, at Step Four, the ALJ found, in the alternative, that Plaintiff could perform his past work as a buyer as that position is generally performed in the national economy. If a claimant can perform past relevant work either as he actually performed it or as it is

generally performed in the national economy, he is not disabled. *See Sloan v. Saul*, 933 F.3d 946, 950 (8th Cir. 2019). Second, at Step Five, the ALJ made an alternative finding that there were other positions existing in significant numbers in the national economy that Plaintiff could perform. The Court will thus consider whether either of these alternative findings is supported by substantial evidence.

**B. The ALJ's Step Four Finding that Plaintiff Could Perform the Buyer Position as Generally Performed**

The parties agree that the ALJ's decision not to adopt Dr. Noll's opinion limiting Plaintiff to occasional fingering and feeling did not impact the ALJ's finding that Plaintiff could perform the buyer position as generally performed in the national economy. The vocational expert testified that an individual limited to occasional fingering and feeling could still perform the buyer position as it is generally performed. (Tr. 64-65). However, the vocational expert also testified that the buyer position as generally performed involves a higher exertional level than the buyer position as actually performed: as generally performed, the buyer position is a "light" job. (Tr. 61). *See also* DOT No. 162.157-038, 1991 WL 647293 (indicating that the position of buyer is position is "light work"). "Light work" is an exertional category that includes jobs that generally require a "good deal of walking or standing." *See* 20 C.F.R. §§ 404.1567(b), 416.967(b).

Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's subjective complaints of pain and numbness in his feet that limit his ability to stand and walk and thus would limit his ability to perform light work, including the buyer position as it is generally performed. The Court agrees.

"When evaluating the claimant's subjective complaints, the ALJ must consider all of the evidence, including objective medical evidence, the claimant's work history, and evidence

relating to the *Polaski* factors: (i) the claimant's daily activities; (ii) the duration, frequency, and intensity of the claimant's pain; (iii) precipitating and aggravating factors; (iv) the dosage, effectiveness, and side effects of medication; and (v) the claimant's functional restrictions." *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (citing *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984)). *See also* 20 C.F.R. §§ 404.1529(c), 416.929(c) ("Factors relevant to your symptoms, such as pain, which we will consider include: (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."). "The ALJ is not required to discuss each *Polaski* factor as long as 'he [or she] acknowledges and considers the factors before discounting a claimant's subjective complaints.'" *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010) (quoting *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009)). "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017). The Court will defer to the ALJ's assessment of a claimant's subjective complaints where the assessment is "supported by good reasons and substantial evidence." *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019).

Here, the ALJ summarized Plaintiff's testimony regarding the limiting effects of his neuropathy and summarized Plaintiff's description of his daily activities in his function reports. (Tr. 19-20). The ALJ then found that Plaintiff's "allegations and activities of daily living are not entirely consistent," that Plaintiff's statements regarding the effects of his symptoms "are only somewhat consistent with the objective medical evidence," and that "the record as a whole demonstrates he is capable of performing physical work-related tasks within the limitations of the [RFC]." (Tr. 20). The ALJ then summarized Plaintiff's medical records and the prior administrative medical findings of Dr. Bland and Dr. Noll. (Tr. 20-23). The ALJ concluded, "Based on the entire record, including but not limited to the claimant's ability to participate in various typical activities of daily living, such as performing some household chores, driving, and tending to his personal care activities, the undersigned concludes the evidence fails to support the claimant's allegations." (Tr. 23).

In discounting Plaintiff's subjective complaints related to his neuropathy, the ALJ appears to have relied largely on Plaintiff's reported daily activities. It is well-established that "[a]llegations of pain may be discredited by evidence of daily activities inconsistent with such allegations." *Davis v. Apfel*, 239 F.3d 962, 967 (8th Cir. 2001). However, Plaintiff's reported daily activities were limited in a way that appears to be *consistent* with Plaintiff's allegations. Plaintiff does not allege constant pain or numbness that prevents him from ever standing or walking. Instead, he alleges pain and numbness in his feet that prevent him from walking for more than 15 minutes at a time and prevent him from standing in one spot without constantly shifting his weight back and forth or walking it off. (Tr. 49-50, 259). Consistent with these allegations, Plaintiff reports that he fixes sandwiches and microwaves meals for a few minutes but that he cannot stand long enough to use the grill, prepare pasta or rice, or bake (Tr. 262, 280);

that he loads and unloads the dishwasher every couple of days but takes breaks to sit down in between unloading and loading (Tr. 51, 260, 280); that he can take out the trash, clean the kitchen and bathroom, and use the leaf blower on the patio, but only for "just a few minutes" once a week (Tr. 262); that he cannot push a mower or rake leaves (Tr. 262); that he shops for groceries once every two weeks for a maximum of 10 minutes and uses a cart to walk with (Tr. 58, 281); that he can shower but has to have hold of one of the walls to keep his balance (Tr. 50-51, 279); and that he rarely goes down to the basement because of concerns about falling (Tr. 52). Because these activities are not inconsistent with Plaintiff's allegations, they provide little or no support for discounting those allegations. *See Ford v. Astrue*, 518 F.3d 979, 983 (8th Cir. 2008) ("[T]he ALJ erred in concluding that [the plaintiff's] description of her daily activities worked against her. She consistently reported being able to do such things as washing a few dishes, ironing one or two pieces of clothing, making three or four meals each week, and reading, and we do not think that these activities are inconsistent with her complaints of pain or with her contention that she is unable to hold a full time job."); *Ross v. Apfel,* 218 F.3d 844, 849 (8th Cir. 2000) (finding the claimant's ability to perform limited daily activities on his good days, such as mowing the lawn with breaks and driving, was not inconsistent with his testimony that on his bad days, he could not function at all; noting that "the ability to perform sporadic light activities does not mean that the claimant is able to perform full time competitive work"). *See also Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005) ("[A] claimant need not prove [he] is bedridden or completely helpless to be found disabled.") (quotation marks omitted).

The ALJ also stated that Plaintiff's statements concerning the limiting effects of his symptoms were "only somewhat consistent with the objective medical evidence." (Tr. 20). However, the ALJ did not explain what objective medical evidence she found inconsistent with

Plaintiff's subjective complaints, nor is it apparent to the Court. The objective medical evidence shows that Plaintiff had abnormal monofilament testing in both feet and was positive for pinprick gradient below the knees, decreased proprioception in the toes, temperature gradient below the knees, and absent vibration at the toes. (Tr. 368, 493). His gait was "slightly wide-based," and he was "unable to heel, toe, or tandem walk." (Tr. 493). His neurologist noted that his examination was "notable for length dependent sensory loss in all modalities without any clear weakness" and that his exam was "consistent with an axonal sensory polyneuropathy." (Tr. 493). This medical evidence appears to support Plaintiff's complaints of pain and numbness from neuropathy that significantly affect his ability to stand and walk. It is unclear why the ALJ believed this evidence (or any other objective medical evidence) undermined Plaintiff's complaints of pain and numbness in his feet that prevented him from standing and/or walking for more than 15 minutes at a time.

The ALJ did not discuss the how the remaining *Polaski* factors affected the analysis of Plaintiff's subjective complaints. At least some of those factors appear to provide support for Plaintiff's complaints. For example, with regard to the intensity of pain and the effectiveness of treatment, Plaintiff reported that he continued to have "severe burning pain" in his feet that rendered him unable to use an exercise bike even while taking what his provider described as the "maximum dose of Lyrica." (Tr. 360). He reported "constant numbness and tingling in his feet mid-way up his calves" and "ongoing painful paresthesias in his feet" even while taking "maximal doses of pregabalin and duloxetine," and it was noted that he might benefit from additional treatments. (Tr. 490, 493). The record also shows that he sought treatment for an injury to his rib after he lost his footing walking down the hall at home (Tr. 496). It is unclear whether, or how, the ALJ considered this evidence in assessing Plaintiff's subjective complaints.

In his brief, Defendant argues that "[t]he ALJ's decision touched on a number of factors that supported the evaluation of Plaintiff' subjective complaints, including objective findings, his treatment history and response to treatment, and his daily activities." Doc. 12, at p. 7. The Court agrees that the ALJ's decision, including the ALJ's summary of the medical records, "touched on" the topics covered by those factors, in that the ALJ summarized the evidence related to those topics. The problem is that the ALJ did not explain how any of that evidence supported the ALJ's evaluation of Plaintiff's subjective complaints, nor—as discussed above—is it apparent to the Court.

The Court is mindful of the fact that it must defer to the ALJ's assessment of a claimant's subjective complaints if the ALJ conducts the required analysis, supported by good reasons and substantial evidence. *See, e.g., Renstrom v. Astrue*, 680 F.3d 1057, 1063-64 (8th Cir. 2012). However, on the specific record in this case, the Court cannot say that the ALJ adequately considered the relevant factors or articulated good reasons for her assessment. *See Ratliff v. O'Malley*, No. 4:23-CV-431-ACL, 2024 WL 4298538, at *7 (E.D. Mo. Sept. 26, 2024) (remanding because "the ALJ erred by failing to detail the inconsistencies in [the plaintiff's] testimony and the record that caused the ALJ to reject [the plaintiff's] subjective complaints"); *Curtis v. Berryhill*, No. 4:17-CV-1524-ERW, 2019 WL 118524, at *5 (E.D. Mo. Jan. 7, 2019) ("[T]he ALJ erred by failing to specifically and accurately detail the inconsistencies in Plaintiff's testimony and the record which caused the ALJ to reject Plaintiff's subjective complaints and find her not credible. Therefore, there is not substantial evidence and good reasons to support the ALJ's credibility determinations and remand is required.").

The Court also notes that if the ALJ had given more weight to Plaintiff's subjective complaints of pain and numbness that prevent him from being able to stand or walk for more

than 15 minutes at a time, it appears likely that he would be unable to perform his past relevant work as a buyer as that job was actually performed—a light work job that may involve a good deal of walking or standing. Thus, the Step Four finding that Plaintiff could perform his past relevant work as a buyer as actually performed was not supported by substantial evidence.

### C. The ALJ's Step Five Finding that Plaintiff Could Perform Other Jobs that Exist in Significant Numbers in the National Economy

At Step Five, the ALJ made an alternative finding that there were other jobs in the national economy that Plaintiff could perform, including office helper, mail clerk, and information clerk. (Tr. 25). As the ALJ and both parties recognize, these are all light work jobs. Thus, the Step Five finding suffers from the same finding as the  problem with the ALJ's Step Four finding that Plaintiff could perform his past relevant work as it was actually performed.

For all of the above reasons, the Court finds that neither the ALJ's Step Four findings nor the ALJ's Step Five findings were supported by substantial evidence, and the Court must remand this case for further consideration. On remand, the ALJ should either incorporate into the RFC the limitations on fingering and feeling in Dr. Noll's opinion or should explain why she is not doing so. The ALJ should also re-evaluate Plaintiff's subjective complaints of pain and numbness in his feet that limit his ability to stand and walk. In doing so, the ALJ should make it clear that she has considered all of the *Polaski* factors. To the extent that she discounts Plaintiff's allegations of pain and numbness that affect his ability to stand and walk for prolonged periods, she should make it clear why she is doing so.

## VII. CONCLUSION

For the reasons set forth above, the Court finds that the decision of the Commissioner is not supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED,** and **DECREED** that the decision of the Commissioner of Social Security is **REVERSED** and that this case is **REMANDED** under 42 U.S.C. § 1383(c)(3) and Sentence Four of 42 U.S.C. § 405(g) for reconsideration and further proceedings consistent with this opinion.

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 18th day of September, 2026.